# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LORI D. FRANKLIN,           )
                            )
           Plaintiff,       )
                            )
v.                          )   Case No. CIV-10-418-KEW
                            )
MICHAEL J. ASTRUE,          )
Commissioner of Social      )
Security Administration,    )
                            )
           Defendant.       )

## OPINION AND ORDER

Plaintiff Lori D. Franklin (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on November 7, 1973 and was 36 years old at the time of the ALJ's decision. Claimant completed her high school education as well as vocational training as a certified nurse's aide and home health aide. Claimant worked in the past as a nurse aide, home health provider, stock clerk, sales clerk/cashier, and a clothing sorter. Claimant alleges an inability to work beginning

October 23, 2007 due to manic depression/bipolar disorder, schizophrenia, depression, anxiety, and post traumatic stress disorder ("PTSD").

## Procedural History

On February 1, 2008, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 11, 2010, an administrative hearing was held before ALJ John Volz in McAlester, Oklahoma. On June 24, 2010, the ALJ issued an unfavorable decision. On September 20, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with some limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) improperly

weighing and rejecting Claimant's treating physician; and (2) improperly rejecting a vital portion of an examining physician.

**Evaluation of Claimant's Treating Physician's Opinion**

In his decision, the ALJ determined that Claimant suffered from the severe impairments of bipolar disorder, anxiety-related disorder, and borderline intellectual functioning. (Tr. 13). In reaching Claimant's RFC, the ALJ found Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, standing and/or walking for a total of about 6 hours in an 8 hour workday, sitting for a total of about 6 hours in an 8 hour workday, except that Claimant was able to perform only simple tasks with routine supervision with no repeat contact with the general public. (Tr. 14).

Claimant contends the ALJ failed to properly weigh and consider the opinion of her treating physician, Dr. Charles D. Van Tuyl. On August 6, 2008, Dr. Van Tuyl completed a Mental Status Form on Claimant. Claimant was threatening to kill her mother after being off her medication for a week. He stated Claimant was agitated, angry, weeping, and threatening. Dr. Tuyl stated Claimant could not handle any stress and that she was isolated at home. Claimant required a medication adjustment, noting that her condition of bipolar disorder is lifelong. Dr. Van Tuyl opined that Claimant

5

could not remember, comprehend and carry out instructions on an independent basis or respond to work pressure, supervision and co-workers. (Tr. 242).

The ALJ acknowledged Dr. Van Tuyl's opinions contained on the Mental Status Form as well as Dr. Van Tuyl's treatment record. (Tr. 17). The ALJ concluded, however, that Dr. Van Tuyl's opinion was entitled to "little weight" because (1) Dr. Van Tuyl provided no clinical signs in support of his conclusions; (2) his account of Claimant's limitations was "more an act of courtesy to a patient of long-standing, rather than a genuine medical assessment of functional limitations based upon clinically established pathologies"; (3) Dr. Tuyl's own treatment records did not support his opinion; and (4) Dr. Tuyl found Claimant could have some improvement if she was compliant. (Tr. 19).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Tuyl's opinion contained as many clinical findings as the inherent brevity of the mental status form would allow. His medical observations were included on the form. Moreover, if the ALJ determined that they did not contain sufficient detail, he should have sought further evidence or clarification from Dr. Tuyl. 20 C.F.R. § 416.912(e)(1). He did not do so and it was error to reject Dr. Tuyl's opinions on this basis.

Additionally, the ALJ employed a tactic in reducing the weight provided to a treating physician's opinion which has been rejected by the Tenth Circuit and largely abandoned by ALJs. The statement that the opinion was provided as a courtesy to the patient does not provide a sound basis for rejecting the opinions of a treating physician. Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987).

Similarly, rejecting a treating physician's opinion because it is not supported by his treatment records without explanation does not provide an adequate basis for rejecting the opinion. Langley, 373 F.3d at 1123. On remand, the ALJ shall specifically identify

the inconsistencies between the physician's treating notes and his opinion stated on the mental status form.

The ALJ's final basis for rejecting Dr. Tuyl's opinion was that the physician stated Claimant's condition might improve if she were compliant. Curiously, the ALJ was willing to accept Dr. Tuyl's opinion when it supported the ALJ's conclusions but rejected it when it ran contrary to his ultimate findings. In any event, this statement without more is insufficient for the reduced weight the ALJ provided to Dr. Tuyl's opinion. Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991). On remand, the ALJ shall discuss Dr. Tuyl's extensive treatment record and the Watkins factors in assessing the weight which should be afforded Dr. Tuyl's opinion.

### Assessment of Dr. Vaught's Opinion

On May 10, 2010, Claimant was evaluated by Dr. Larry Vaught. Dr. Vaught found Claimant to be anxious in demeanor with a restricted affect. He stated she had a history of depression with some manic features. She occasionally reported seeing human figures or hearing things, including lady bugs and a "dark man." The man sometimes told her to hurt herself. She had some intermittent suicidal ideation. Claimant is hypervigilant around men and tends to panic when her mother is not around. She reports having been sexually abused by her father when she was a child. (Tr. 281).

In testing, Claimant on the WAIS-III scored a Verbal I.Q. of 72, Performance I.Q. of 75, and a Full Scale I.Q. of 71, placing her in the borderline intellectual functioning range. (Tr. 282). On the Beck Depression Inventory, Claimant scored a 42, suggesting the possibility of moderate to severe depression. On the Beck Anxiety Inventory, Claimant scored 30, suggesting the possibility of moderate anxiety. (Tr. 283). Dr. Vaught diagnosed Claimant with Mood Disorder, NOS with Psychotic Features, PTSD, Amphetamine Abuse in Remission, Borderline Intellectual Functioning, and a GAF of 40. (Tr. 284).

On May 20, 2010, Dr. Vaught also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on Claimant. He concluded Claimant was markedly limited in the areas of interacting appropriately with the public, interacting appropriately with supervisors, and interacting appropriately with co-workers. (Tr. 286).

In his decision, the ALJ gave Dr. Vaught's opinions "some weight." (Tr. 19). The only restriction the ALJ placed on Claimant's RFC, however, was simple tasks with routine supervision with no repeat contact with the general public. (Tr. 14). The ALJ neither addressed the other marked restrictions identified by Dr. Vaught nor did the ALJ discuss his reasons for accepting part of Dr. Vaught's conclusions while rejecting the other marked restrictions.

On remand, the ALJ shall give his basis for rejecting Dr. Vaught's marked restrictions on interacting with supervisors and co-workers. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 27th day of March, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE